## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THERESA M.,

      Plaintiff,

    v.

KILOLO KIJAKAZI,
  ACTING COMMISSIONER OF
  SOCIAL SECURITY,[1]

      Defendant.

No. 20 CV 481

Magistrate Judge McShain

## MEMORANDUM OPINION AND ORDER

Plaintiff Theresa M. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision [17][2] is granted, the Acting Commissioner of Social Security's motion for summary judgment [19] is denied, and this case is remanded to the agency for further administrative proceedings.

## Procedural Background

In January 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of June 1, 2016. [13-1] 32. The claim was denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held by an administrative law judge (ALJ) on September 17, 2018. [*Id.*] 51-93. In a decision dated January 7, 2019, the ALJ found that plaintiff was not disabled and denied her application. [*Id.*] 32-42. The Appeals Council denied review on November 18, 2019 [*id.*] 1-6, making the ALJ's decision the agency's final decision. 20 C.F.R. §§ 404.955 & 404.981. Plaintiff timely appealed to this Court [1], and the

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13-1], which refer to the page numbers in the bottom right corner of each page.

Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

## Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. Jun. 29, 2021) (internal quotation marks and citation omitted).

## Discussion

At step one of his decision, the ALJ found that plaintiff had not engaged in substantial gainful employment since her alleged onset date. [13-1] 34. At step two, the ALJ determined that plaintiff suffered from five severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; history of anterior cervical diskectomy and fusion; osteoarthritis of the bilateral knees; diabetes mellitus; and obesity. [*Id.*] 35. At step three, the ALJ ruled that plaintiff does not have an impairment or combination of impairments that meets or equals a listed

---

[3] The parties consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [6, 9].

impairment. [*Id.*] 36-37. Before turning to step four, the ALJ found that plaintiff has the residual functional capacity to perform light work, except that plaintiff can (1) stand/walk four hours in an eight-hour workday; (2) occasionally use right foot controls and frequently use left foot controls; (3) occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; (4) occasionally balance, stoop, kneel, crouch, and crawl; and (5) never work at unprotected heights or with moving mechanical parts. [*Id.*] 37-41. At step four, the ALJ found that plaintiff could perform her past relevant work as an assembler, insurance clerk, medical clerk, billing clerk, referral coordinator, and receptionist. [*Id.*]. Because that ruling meant that plaintiff was not disabled, *see* 20 C.F.R. § 404.1520(f), the ALJ did not proceed to step five.

Plaintiff argues that the ALJ's physical RFC determination is not supported by substantial evidence. More specifically, plaintiff contends that (1) after the ALJ gave little weight to the opinions of the non-examining State agency medical consultants that plaintiff could perform medium work, the ALJ faced an "evidentiary deficit" that he could not "fill with his lay understanding of how a claimant's impairments restricts her ability to perform work tasks"; (2) the ALJ failed to adequately explain how plaintiff's obesity affected her ability to sit; (3) the ALJ did not account for plaintiff's need to lie down throughout the day; and (4) improperly rejected plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms. *See* [17] 5-9, 12-15.

The Court agrees that multiple errors in the ALJ's physical RFC determination warrant remand.[4]

## A. The Physical RFC Determination Is So Poorly Articulated That Meaningful Appellate Review Is Impossible.

"A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). "The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling." *Jarnutowski v. Kijakazi*, No. 21-2130, --- F.4th ----, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022). "The regulation also requires an ALJ to describe how the evidence supports each conclusion about a strength function, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (internal quotation marks and brackets omitted). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). In crafting the RFC, the ALJ "must explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v.*

---

[4] Consequently, the Court need not reach plaintiff's additional argument that the ALJ's mental RFC determination is not supported by substantial evidence.

*Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (internal quotation marks omitted).

After recounting plaintiff's allegations and testimony about the intensity, persistence, and limiting effects of her symptoms, the ALJ acknowledged that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" [13-1] 38. But the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" According to the ALJ:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her own symptoms, they are inconsistent because the alleged severity is generally not consistent with the medical evidence of record. Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

[*Id.*] 38.

The ALJ then summarized the "relatively weak" medical evidence relating to plaintiff's spinal and knee impairments. *See* [13-1] 36-39. According to the ALJ's own summary, this evidence showed that:

- At a February 2017 consultative exam, plaintiff had no difficulty standing, bending, or sitting; no difficulty with gait; and minimal difficulty lifting/carrying.

- At a June 2017 consultative exam for bilateral knee pain, plaintiff walked with a limp, both knees had slight varus malalignment, and an X-ray showed medial joint space narrowing, but not quite bone-on-bone. The examiner "provides injections."

- At a July 2017 examination, plaintiff reported that her upper and lower back pain was "bothering her a lot," and a physical exam documented tenderness, limited range of motion, and bony deformity.

- A January 2018 MRI of plaintiff's lumbar spine showed mild space loss at L5-S1 but no significant spondylolisthesis. Plaintiff complained to an orthopedic specialist that same day of pain in her neck and thoracic and lumbar spines, which was worse when standing more than 15 minutes at a time. A physical exam noted only slight pain with hyperextension and bilateral genu varum deformity, but 5/5 strength and normal straight leg raise.

- At a March 3, 2018 physical therapy appointment, plaintiff reported feeling discomfort after climbing nine steps.

- In April 2018, plaintiff was diagnosed with degenerative arthritis of the spine, and x-rays showed some wedging of the L3 vertebrae but "no degenerative changes above her prior surgery." Plaintiff's medication was helpful in reducing her pain, and a posture bra helped improve her thoracic pain.

- Notes from a physical therapy session in July 2018 reflect that "relief from shots in [plaintiff's] knees a month prior only lasted two days," but plaintiff's mobility increased, her back pain decreased, and her gait improved "after correcting her pelvis."

- At an August 2018 appointment with an orthopedic surgeon, plaintiff reported intermittent knee pain, minimal relief from injections, and no progress in physical therapy. Plaintiff received an injection in the pes bursa, and the surgeon opined that plaintiff "may be a candidate for staged bilateral UKAs if all non-operative measures fail."

- An MRI of plaintiff's lumbar spine taken on September 7, 2018 showed "spondylosis with mild to moderate central, R lateral recess, and foraminal stenosis at L4-5[.]"

- An examination on September 21, 2018 revealed a prolapsed lumbar disc, and plaintiff reported being unable to sit/stand too long, push/pull, or overhead reach. Plaintiff was referred to pain management.

[13-1] 39-41.

The ALJ concluded his analysis by stating that "the above [RFC] is supported by the objective medical findings, the claimant's treatment history, and the assessments of the State agency consultants."[5] [13-1] 41.

---

[5] This was a reference to the State agency consultants' assessments of plaintiff's psychological limitations, to which the ALJ gave great weight. [13-1] 40. In contrast, and as discussed below, the ALJ gave only limited weight to the consultants' assessments of plaintiff's physical limitations because medical records post-dating their assessments showed that plaintiff's condition had worsened. *See* [*id.*].

The ALJ's decision is so poorly articulated that the Court is unable to meaningfully review the ALJ's ruling that plaintiff is capable of a limited range of light work. Rather than explain why the medical evidence he had just discussed supported the limitations in the RFC, the ALJ merely summarized the evidence without meaningfully evaluating it or describing how it supported the RFC determination. The Court is therefore unable to determine whether substantial evidence supports the RFC determination. *See Channell v. Kijakazi*, 21 C 3094, 2022 WL 4386589, at *4 (N.D. Ill. Sept. 22, 2022) (remanding where, "[a]lthough the ALJ's opinion recites the medical evidence from the record, it does not describe how the evidence supports the positional limitation" included in RFC); *Peter H. v. Kijakazi*, No. 20 C 1906, 2022 WL 2105915, at *3 (N.D. Ill. Jun. 10, 2022) ("the ALJ provided *no explanation* for how the RFC accounts for any of plaintiff's mental impairments or limitations; instead, the ALJ simply recited pages of evidence from the medical record and identified an RFC without any meaningful analysis establishing how or why the limitations identified in the RFC connect with the record.") (emphasis in original); *Patricia C. v. Saul*, No. 19-cv-3951, 2021 WL 131420, at *3 (N.D. Ill. Jan. 14, 2021) ("While the ALJ summarized the medical evidence, he did not specifically identify which evidence supports each of these limitations. Absent this information, the Court cannot determine whether the RFC is supported by substantial evidence.") (internal citation omitted).

To be sure, the ALJ found that the medical evidence was "relatively weak," but weak in relation to what? The ALJ offered no explanation for that conclusion, nor did he explain how the RFC determination accounted for plaintiff's impairments. Furthermore, much of the evidence in the ALJ's summary appears consistent with plaintiff's allegations and testimony: she consistently reported back pain, including pain that was worse when standing; two MRIs in 2018 documented degenerative changes in her lumbar spine, including mild to moderate stenosis; an orthopedic surgeon identified her as a likely candidate for bilateral knee surgery; plaintiff received multiple injections in her knees, some of which were only minimally effective at controlling her pain; and plaintiff was referred to pain management after reporting that she was unable to sit/stand for too long. In citing this evidence, the Court is not suggesting that the ALJ had to credit it or find that it showed that plaintiff was disabled. Rather, the Court highlights this evidence because it appears inconsistent with the ALJ's unexplained conclusion that the medical evidence was "relatively weak" and, in the absence of any description of how the evidence supports the RFC determination, the Court is unable to meaningfully review the ALJ's decision. *See Channell*, 2022 WL 4386589, at *4; *Peter H.*, 2022 WL 2105915, at *3; *Patricia C.*, 2021 WL 131420, at *3; *Brett D.*, 2021 WL 2660753, at *1.

Finally–and apart from the error just discussed–the Court observes that once the ALJ rejected the opinions of the State agency medical consultants that plaintiff could perform medium work, there was no opinion evidence suggesting that plaintiff could perform a restricted range of light work. Dr. Richard Bilansky opined in April

2017 that plaintiff was capable of medium work, *see* [13-2] 103, and Dr. Ranga Reddy reached the same conclusion in August 2017, *see* [*id.*] 116. The ALJ gave these opinions little weight, however, because medical records "received after their review show that the claimant's condition progressed in 2018," such that additional work-related limitations were warranted. [13-1] 40. Despite that conclusion, the ALJ did not explain how he determined that restricting plaintiff to a limited range of light work properly accounted for what the more recent records showed. And given the ALJ's unexplained and opaque conclusion that this evidence was "relatively weak," the Court is simply unable to trace the path of the ALJ's reasoning. Remand is therefore required, as this is a case where "[n]o physician testified–no medical records [re]vealed–that [plaintiff] has the residual functional capacity ascribed to h[er] by the administrative law judge." *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013); *see also Murphy v. Colvin*, 759 F.3d 811, 817-18 (7th Cir. 2014) (ALJ's finding that plaintiff could perform light work not supported by substantial evidence where "[t]here is no medical evidence in the record to contradict Murphy's claim" that she could not perform such work, and primary doctor's treating notes neither "contradict[ed] Murphy's testimony" about her limitations nor "address[ed] the legal requirements one must be able to perform before the ALJ can determine that the individual is able to do light work")

Relying on *Burmester v. Berryhill*, defendant argues that the RFC was adequately explained because "the ALJ's RFC finding" was "'more limiting than that of any state agency doctor[.]'" [20] 3 (quoting 920 F.3d 507, 510) (7th Cir. 2019)). This argument lacks merit because *Burmester* "addressed an ALJ's use of boilerplate, not an ALJ's compliance [with] SSR 96-8p," and nothing in *Burmester* "suggest[s] that an ALJ is excused from SSR 96-8p's narrative discussion requirement if her RFC finding was more limiting than that of the state agency doctors." *Channell*, 2022 WL 4386589, at *5. Because the ALJ did not describe why the evidence supported his determination that plaintiff could perform a limited range of light work, remand is warranted. *See Amy F. v. Saul*, No. 19 C 7733, 2020 WL 6509339, at *2 (N.D. Ill. Nov. 5, 2020) (remanding where ALJ, after assigning some weight to state agency reviewer's outdated opinion, "amended" the reviewer's RFC determination "by adding postural restrictions and a limitation to no more than frequent bilateral, overhead reaching" but failed to "identify the medical evidence that supports the changes she made" to reviewer's original RFC determination).

## B. The ALJ Did Not Adequately Explain Whether Plaintiff's Obesity Affected Her Ability To Sit.

"[O]besity is no longer a standalone disabling impairment," but "the ALJ must still consider its impact when evaluating the severity of other impairments." *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018). "This is because the combined effects of obesity with other impairments may be greater than might be expected without

obesity." *Tanitria C. v. Saul*, No. 19 CV 1884, 2021 WL 1577795, at *8 (N.D. Ill. Apr. 22, 2021) (internal quotation marks omitted).

The ALJ found that plaintiff's obesity was a severe impairment and recognized that plaintiff's body mass index (BMI) was greater than 40 kg/m², which is "considered Level III obesity" or morbid obesity. [13-1] 40; *see also Louise W. v. Kijakazi*, No. 19 cv 7734, 2022 WL 4109716, at *6 n.4 (N.D. Ill. Sept. 8, 2022) ("Persons with a BMI of over 40 are considered to be morbidly obese."). According to the ALJ, however, while "[i]t is reasonable to infer that the claimant's pain or other symptomologies may be exacerbated by her weight," there was "no indication that it would preclude her from performing the modified light exertional residual functional capacity assessed herein." [13-1] 40. This conclusion, like the ALJ's broader physical RFC determination, is so poorly articulated that the Court is unable to trace the path of the ALJ's reasoning: "If the ALJ thought that [plaintiff's] obesity has not resulted in limitations on her ability to work, he should have explained how he reached that conclusion." *Arnett*, 676 F.3d at 593. The ALJ's conclusory assertion that there was "no indication" that plaintiff's obesity would preclude her from performing light work is in obvious tension with the fact of plaintiff's morbid obesity itself, her severe knee and spinal impairments, and evidence that plaintiff had difficulty sitting for prolonged periods of time.[6] *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.").

Defendant's arguments to the contrary lack merit. Defendant first argues that there was substantial evidence that, notwithstanding her obesity, plaintiff could perform light work because a consultative examiner opined in February 2017 that plaintiff had no difficulty sitting, and because the State agency reviewers both opined plaintiff could perform medium work. [20] 4. However, the ALJ gave little weight to the State agency physicians' opinions because more recent evidence showed that plaintiff's condition had progressed after they had completed their reviews, so it is not clear why–or whether–the ALJ credited their opinions on plaintiff's ability to sit. *Cf. Mildred B. v. Kijakazi*, No. 19 CV 3532, 2022 WL 1746849, at *3 (N.D. Ill. May 31, 2022) (ALJ must explain why he adopts some parts of medical opinion but rejects others). And while the February 2017 consultative exam may not support plaintiff's allegations, other evidence in the record–such as plaintiff's report in September 2018 that she cannot sit too long and her hearing testimony–did. Yet nothing in the ALJ's decision indicates that he considered–let alone tried to resolve–this conflict in the evidence. *See Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) ("The error here is the failure to address all of the evidence and explain the reasoning behind the

---

[6] *See* [13-7] 599 (plaintiff's report at September 2018 evaluation that she "cannot sit or stand for too long"); [13-1] 57, 71 (plaintiff's testimony that "[s]itting over 20 minutes I start getting back pain" and that she needs to change positions after sitting for 15 to 20 minutes); [13-3] 285 (statement in February 2017 function report that "sitting to [sic] long back hurts").

decision to credit some evidence over the contrary evidence, such that we could understand the ALJ's logical bridge between the evidence and the conclusion.").

Second, and relying on *Brown v. Colvin*, 845 F.3d 247 (7th Cir. 2010), defendant argues that the ALJ said enough about plaintiff's obesity to satisfy his burden to minimally articulate the reasons for his decision. [20] 5. In *Brown*, "the ALJ repeatedly asserted that he had considered [the claimant's] obesity," making at least three explicit references to obesity; referenced a doctor's "treatment notes that discussed Brown's weight, his encouragement that she lose weight, the increasing pain she endured as a result of her weight-loss attempts[;]" and rejected "the opinions of several government-affiliated doctors on the ground that the longitudinal record demonstrates that [Brown]'s back impairment together with her morbid obesity would prevent her from working above the sedentary exertional level[.]" 845 F.3d at 251-52. Despite all this, the Seventh Circuit still acknowledged that "the issue was close," but the court was unable to say that the ALJ "failed to articulate at some minimal level his analysis of the evidence or that we simply don't know what he thought[.]" *Id.* at 252 (internal citations and quotation marks omitted). Here, in contrast, the ALJ's decision lacks repeated references to plaintiff's obesity or a meaningful consideration of the evidence of obesity, and the Court cannot determine what the ALJ thought about the effects of plaintiff's obesity on her impairments generally or on her ability to sit specifically.

## C. The ALJ's Subjective Symptom Analysis Was Patently Wrong.

"The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (internal quotation marks omitted). "When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Id.* "Ultimately, the ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal brackets and quotation marks omitted).

First, the ALJ concluded that plaintiff's allegations were inconsistent with the objective medical evidence. [13-1] 37-38. As discussed above, however, the ALJ failed to provide any analysis of the medical evidence or explain why he believed that the evidence was "relatively weak" or how it was inconsistent with plaintiff's allegations. *See Moore*, 743 F.3d at 1125 (ALJ's determination that plaintiff's testimony attributing her limitations to migraines was not credible "in light of the relatively weak medical evidence" warranted remand because "this conclusion rests upon a skewed portrayal of the evidence").

9

Second, the ALJ gave only little weight to the statements in a third-party function report completed by plaintiff's daughter because the daughter was "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms" and thus "the accuracy of her observations is questionable." [13-1] 40-41. Plaintiff's daughter spent between two and two-and-a-half hours with her mother every other day and described, *inter alia*, her mother's knee and back pain, her inability to walk more than 10 to 15 minutes due to shortness of breath, and her difficulties lifting, mopping around the house, and driving long distances. [13-3] 264-65, 269. "Although an ALJ may question the reliability of third-party statements, rejecting a statement because of a family member's lack of medical training is improper. Indeed, SSR 16-3p expressly contemplates that an ALJ consider opinions of non-medical sources." *Cynthia H. v. Saul*, No. 19-cv-1962, 2019 WL 6893004, *3 (N.D. Ill. Dec. 18, 2019). It was therefore "illogical" for plaintiff's daughter's "lack of medical training to bar consideration of [her] third-party statement." *Id.*; *see also Dorian W. v. Berryhill*, No. 17 CV 50327, 2019 WL 1572560, at *4 (N.D. Ill. Apr. 11, 2019) (ALJ erred by refusing to give any weight to third-party statement from plaintiff's supervisor on ground that supervisor was not "an acceptable medical source"). While the ALJ also found that plaintiff's daughter's statement was "not entirely consistent with the preponderance of the opinions and observations by medical doctors in this case" [13-1] 41, the Court reiterates its previous finding that the ALJ never explained why he viewed the medical evidence as "relatively weak" and inconsistent with plaintiff's allegations, and the Court observes that the ALJ again failed to identify the medical evidence that contradicted the daughter's statement.

Third, the Court observes that the ALJ dismissed plaintiff's allegations regarding her limited activities of daily life (ADL) because "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" and "in view of the relatively weak medical evidence and other factors discussed in this decision," it was "difficult to attribute that degree of limitation [alleged] by plaintiff to her "medical condition." [13-1] 38. Both of these rationales were improper. To begin, "the fact that a claimant's responses to the ALJ's ADL questions are not accompanied by objective evidence is not automatically a ground for rejecting them–'otherwise, why ask in the first place?'" *Frazier v. Berryhill*, No. 17 C 8484, 2019 WL 157911, at *6 (N.D. Ill. Jan. 10, 2019) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). Moreover, "the ALJ never explained what the alternative reasons for [plaintiff's] restricted activities might be." *Id.*

For all these reasons, the Court concludes that the ALJ's subjective symptom analysis was patently erroneous, and remand is required.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the decision of the SSA [17] is granted, and the Acting Commissioner's motion for summary judgment [19] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 29, 2022**